Filed October 25, 1893.

September Term—1893.

## MARRINER

VS.

## THE BALTIMORE STEAM PACKET COMPANY.

*Barton & Wilmer* and *E. Harvie Smith* for plaintiff.

*John H. Thomas* and *J. Southgate Lemmon* for defendant.

RITCHIE, J.—

A common carrier may reasonably limit its common law liability by contract and a contract that it shall not be liable for loss caused by fire is good; but such a contract will not protect the carrier from liability if the loss by fire results from its own negligence.

Under such a contract, the loss by fire being shown, the onus is on the plaintiff to show negligence.

The adoption after a fire of additional safeguards for the future is not an admission of responsibility for the past and the fact is not evidence of prior negligence.

Opinion of Judge Ritchie on the prayers.

The defendant in this case is a common carrier. The goods for the loss of which this suit is brought were delivered to it for transportation on the 14th day of June, 1892. With the exception of one package, they were destroyed by fire on the defendant's wharf on the same day, and the defendant is sued for damages for their loss.

There being no evidence to show that the loss of these goods was due to the act of God or the public enemy, the defendant would, of course, be liable unless protected by some valid limitation on its common law liability. The contract of shipment, however, provides that the defendant is not to be liable for damages in case the goods in question should be lost by fire. There can be no doubt now that common carriers may make contracts reasonably limiting their liability, and a contract which exempts them from liability in case of loss by fire is held to be a reasonable one. The plaintiff has proved the failure to deliver these goods; the defendant replies by proof that they were lost by fire. This exemption from liability for loss by fire is not, however, as absolute as its terms import. It is well settled that such a contract will not protect the carrier if the loss be caused by its own negligence. Therefore when the defendant shows that the goods in question were lost by fire, the plaintiff in turn, alleges that they were so lost because of defendant's own negligence. This brings the case down to the question of negligence *vel non* on the part of the defendant in the loss of these goods by the fire testified to. The onus of proving negligence, the loss by fire having been shown, is clearly upon the plaintiff, and in order to warrant the Court in submitting the case to the jury there must be evidence that tends to prove negligence; the plaintiff alleges negligence, he must show it. In the language adopted by the Court of Appeals in Foy's case, it is necessary, in order to meet the onus of showing negligence to produce evidence upon which the jury might reasonably conclude that there was negligence. However clear the general proposition may be that it is the duty of a defendant to use ordinary care and diligence, no case can properly be submitted to a jury simply upon the general proposition. To warrant the Court in letting any given case go to the jury in which the question of neg-

ligence is involved, there must be evidence from which the jury might reasonably find negligence.

We now come to the consideration of the evidence offered in this case to show negligence; if there is any evidence upon which the jury might reasonably conclude that there was negligence, then of course the case must be submitted to the jury; if the plaintiff has failed to produce any evidence from which negligence might reasonably be inferred, then the Court is not at liberty to allow the case to go any further. Now with respect to the fire in question, there is no evidence of any negligent act of commission upon the part of the defendant, there is no evidence of any affirmative negligence. so that if there is any evidence of negligence in the case, it must be found in some act of omission. First then with regard to the origin of the fire. There is no evidence whatever in the case that tells us how this fire originated. There is no presumption of negligence from the fact of the fire, and as there is nothing to show how this fire originated, it is clear that there is a failure of evidence to show negligence with respect to its origin, so that the question of negligence as connected with the origin of the fire is out of the case.

If there be any negligence in the case it must be referred then, to some failure of duty upon the part of the defendant with respect to the spread of the fire; there must be evidence of some negligence in the failure of defendant to extinguish the fire.

As to the extinguishment of the fire, there is no evidence of any negligence in respect to the prompt and active use of such facilities as the defendant had upon its premises for such purpose. There being no evidence of negligence in respect to the origin of the fire, and no negligence in respect to the efforts of defendant, with such means and facilities as it had, to prevent its spread, the negligence, if any' exists must be found in the failure of the defendant to provide proper means and precautions for extinguishing the fire. It thus becomes necessary for the plaintiff to show that there was a failure to provide certain reasonable precautions for the extinguishment of fire, and that had such precautions been provided, the fire, in all probability, would not have extended and the goods would not have been lost.

The plaintiff sets up an alleged failure in two respects. One is as to the number of watchmen. He claims that there ought to have been more than one watchman during the day. One purpose of having a watchman, and the duty of a watchman, is discovery. I do not think there is any evidence in the case to show that, no matter what number of watchmen the defendant might have had, the fire would have been discovered an instant sooner than it was discovered. The testimony shows tthat there were sixty stevedores and fourteen clerks in the employ of the defendant at the time of the fire in question; there were thus seventy-four employees of this company in and around the premises when the fire occurred; all had their various work, but, as was said during the argument, each one was practically a watchman; each one, of course, was ready to give an alarm if any indication of fire appeared. But, coming down a little closer, we find that the one watchman, who was on duty during the day, was in the immediate vicinity of the place where the fire started, and he testifies that he had been at the very place about one minute only before the fire was discovered; that he had not gone from there more than about a minute when he heard the alarm; and that when he was there he saw no evidence whatever of the existence of any fire. Now, then, however many watchmen there might have been, they would not have gone around in couples; they would have been scattered around the premises and only one at any given point. But the evidence shows that while there was but one day watchman, that one was on the very spot where it was important for him to be within about one minute of the discoverey of the fire. Not only did this watchman happen to be at this part of the wharf at the time, but there were three other men who were working on the very pile of cotton where and when the fire appeared, Jones, Stanley and Brown, and they had been working therefor some time. The fire was first discovered by Brown; he instantly called the attention of Jones and Stanley to the fire, and then immediately ran up the wharf and gave the alarm. This is the evidence

with respect to the discovery of the fire, so that, I say there is no evidence in the case whatever, to show that it might have been discovered and its spread thereby prevented, any more promptly than it was discovered, no matter how many watchmen the defendant might have had in its employ.

It is again alleged by the plaintiff, that there was a failure upon the part of the defendant to have such facilities for the extinguishment of fire as it ought to have had. The premises in question are situated in the central part of the city, within easy communication with the fire department of the city; and I am not prepared to say that it was the duty of the defendant to have any private fire apparatus on its premises; that question however need not be passed upon, because the defendant did have certain means of its own for extinguishing fire. We may assume that it was its duty to have reasonable facilities for such purpose, and the inquiry then is, was there any failure or default in the discharge of such duty. What is the evidence on this point? In the first place it shows that the defendant had on its premises a fire-alarm box which gave it instant communication with the fire department of the city; then in addition it had hose and fire bottles; in a word it had substantially the same means and facilities for extinguishing fire as other common carriers engaged in the same kind of business in the City of Baltimore had, and in some instances better than others. It is true that with the facilities which it had, it was not able to extinguish this fire, but that does not show that such means were deficient or that there was negligence in not having provided greater facilities. The five city engines which answered the first alarm and were on the ground within a few minutes after the fire started, were not able to check it, and the entire department of twelve engines could not extinguish it. It was a remarkable fire, one that spread with startling rapidity. A smoke was discovered coming out of a bale of cotton; Jones and Stanley immediately jumped upon the pile of cotton and endeavored to throw this bale out from the pile, the difficulty of displacing it occupied a little time, and before they could do it the flames burst out to such an

extent as that both of them were burnt in the effort and were obliged to flee; the alarm was promptly turned in, and meanwhile the apparatus which the company had was brought promptly into place; it could be used, however, for only a few moments, because by the rapid spread and heat of the fire the men that were attempting to use it, were driven off; they were obliged to run to save themselves from injury, if not loss of life; within three minutes and a half or four minutes from the receipt of the alarm the city fire engine No. 3 was on the premises; Capt. Lucas, one of the plaintiff's witnesses, testifies that the entire eastern line of the wharf property was then on fire; he also testifies that from the character of the fire he thought it possible that it might have spread to the extent which it covered at the time of his arrival, within five minutes from the time it started. He attempted to go in, and did go in some distance upon the wharf, but was driven back; five engines responded to the first alarm; another engine, No. 4, attempted to go in and it also was driven back by reason of the intensity of the fire; Lieutenant Campbell, of No. 3, also one of the plaintiff's witnesses, testifies that the whole five engines which responded to the first alarm were unable to check this fire. So that, as I have said, the evidence shows that this was a remarkable fire and one that spread with unusual rapidity; and the fact that with the means the defendant had for extinguishing fire, it failed to extinguish such a fire as this, furnishes no reasonable ground for an inference that there was negligence in respect to such appliances as it then had.

A good deal of evidence has been introduced by the plaintiff to show that in the reconstruction of its premises the defendant has provided other, and possibly better, means for the extinguishment of fire, and the argument is made that the adoption of these additional precautions is evidence to show that such as existed at the time of the fire were not as efficient as the defendant ought to have had. All this evidence, if it had been objected to, would have been ruled out as inadmissible; inadmissible because it did not tend to prove negligence. The fact that a defendant, after an accident and in the light of experience, adopts additional

safeguards for the future, is not an admission of responsibility for the past, nor is it evidence that he was negligent in the matter of such safeguards as existed at the time of the injury or accident. That this is the law will be seen by reference to Hawthorne's case in 144 U. S. 202 and 2d Ray on Negligence 725. The Pennsylvania cases are contrary to the weight of authority. As this evidence would on motion have been excluded, because it did not tend to prove negligence, the fact that defendant allowed it to remain in the case cannot any more make it evidence of negligence; whether in or out, it does not tend to prove negligence, and it therefore does not require any further notice. I may say, however, that there is no evidence to show that the means and safeguards which defendant now has would be more efficient in extinguishing such a fire than such as defendant then had; no evidence to show that the present provisions would probably have prevented the spread of such a fire.

From this review of the evidence it appears that there is no room for asserting any negligence on the part of the defendant unless it be found in the failure to provide such reasonable precautions against the spread of fire as, had they been provided, would probably have prevented the spread of this fire. As to the alleged failure in respect to the number of watchmen, it is shown that the fire could not have been discovered more promptly, no matter what the number might have been; and as to the other alleged failure in respect to the means provided for extinguishing fire, it is shown that such as defendant had were substantially the same as those used by others in the same business, that they were as promptly, and efficiently used as was possible under the circumstances, and there is a failure to show that any others which defendant could reasonably be asked to have provided, would probably have prevented the spread of this fire and averted the loss of the goods in question.

Finding no evidence from which it could be reasonably inferred that there was any negligence on the part of the defendant, I must grant the first prayer of the defendant and reject the prayers of the plaintiff.